PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 22-0213-KJM |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: AUGUST 23, 2023 |
| TOU SUE VANG, | TIME: 9:00 A.M. |
| | COURT: Hon. KIMBERLY J. MUELLER |
| Defendant. | |

## I.   INTRODUCTION

### A.   Scope of Agreement.

The indictment in this case charges the defendant with violations of 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate (Count 1); 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering (Count 2); 18 U.S.C. § 2314 – Interstate Transport of Stolen Property (Counts 3-6); 31 U.S.C. § 5324(a)(3) and (d)(2) – Structuring Currency Transactions (Counts 7-19); 18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified Unlawful Activity (Counts 20-36); 18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money Laundering (Counts 37-40). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

PLEA AGREEMENT

1

1   **B.      Court Not a Party.**

2        The Court is not a party to this plea agreement.  Sentencing is a matter solely within the

3   discretion of the Court, and the Court may take into consideration any and all facts and circumstances

4   concerning the criminal activities of defendant, including activities which may not have been charged in

5   the indictment.  The Court is under no obligation to accept any recommendations made by the

6   government, and the Court may in its discretion impose any sentence it deems appropriate up to and

7   including the statutory maximum stated in this plea agreement.

8        If the Court should impose any sentence up to the maximum established by the statute, the

9   defendant cannot, for that reason alone, withdraw his guilty pleas, and he will remain bound to fulfill all

10   of the obligations under this plea agreement.  The defendant understands that neither the prosecutor,

11   defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will

12   receive.

13                  **II.       DEFENDANT'S OBLIGATIONS**

14   **A.      Guilty Plea.**

15        The defendant will plead guilty to violations of: 18 U.S.C. § 371 – Conspiracy to Transport

16   Stolen Property Interstate (Count 1); 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering

17   (Count 2); 18 U.S.C. § 2314 – Interstate Transport of Stolen Property (Counts 3-6); 31 U.S.C. §

18   5324(a)(3) and (d)(2) – Structuring Currency Transactions (Counts 7-19); 18 U.S.C. § 1957(a) –

19   Monetary Transactions with Proceeds of Specified Unlawful Activity (Counts 20-36); 18 U.S.C. §

20   1956(a)(1)(B)(i) – Concealment Money Laundering (Counts 37-40).  The defendant agrees that he is in

21   fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as

22   Exhibit A are accurate.

23        The defendant agrees that this plea agreement will be filed with the Court and become a part of

24   the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his

25   pleas should the Court not follow the government's sentencing recommendations.

26        The defendant agrees that the statements made by him in signing this Agreement, including the

27   factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by

28   the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

PLEA AGREEMENT                                  2

1   guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f)

2   and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this

3   Agreement generally.

4               1.      Package Agreement:

5          The defendant acknowledges and understands that the plea offer made to him here by the

6   government is a "package offer."  That is, the defendant understands that the offer made to him is

7   conditioned on co-defendants ANDREW VANG and MONICA MOUA pleading guilty according to the

8   terms of his/her respective plea offers.  The defendant understands that if either of these co-defendants

9   declines, refuses or fails to plead guilty according to his/her respective offer, then, at the option of the

10  government, the defendant will not be allowed to enter a plea of guilty to the offer made to him by the

11  government.  Additionally, if either of the co-defendants ANDREW VANG or MONICA MOUA fails

12  or refuses to enter his or her plea according to his or her respective offer and the defendant has already

13  entered his pleas, then this plea agreement is voidable at the option of the government.  In its sole

14  discretion, the government has the ability to withdraw from the plea agreement with the defendant and

15  pursue the original charges as to this defendant.  However, the defendant's waiver of his rights under

16  Rule 11(f) and Fed. R. Evid. 410, as set forth in Section II.A herein, will not operate.

17         Recognizing that this is a package offer, the defendant confirms that he has not been threatened,

18  pressured, or coerced by any other person, including the co-defendants, to enter into this plea agreement.

19  The defendant also confirms that he enters into this plea agreement voluntarily because he is in fact

20  guilty of the offenses to which he is pleading guilty.

21         **B.     Fine.**

22         The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a

23  fine, and that no fine should be imposed.  The defendant understands that it is his burden to affirmatively

24  prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury

25  to the Probation Officer and the government in advance of the issuance of the draft Presentence

26  Investigation Report, along with supporting documentation.  The government retains the right to oppose

27  the waiver of a fine.  If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered

28  by the Court, up to the statutory maximum fine for the defendant's offense.

PLEA AGREEMENT                                3

C.      **Special Assessment.**

The defendant agrees to pay a special assessment of $4,000 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.  If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

D.      **Violation of Plea Agreement by Defendant/Withdrawal of Pleas.**

If the defendant violates this plea agreement in any way, withdraws his pleas, or tries to withdraw his pleas, this plea agreement is voidable at the option of the government.  If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein.  A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice.  Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement.  The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge.  The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of

PLEA AGREEMENT

4

limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.  The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### E.    Forfeiture.

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 28 U.S.C. § 2461(c), and 31 U.S.C. § 5317(c)(1).  Those assets include, but are not limited to, the following:

1.    Approximately $152,783.00 in U.S. Currency;

2.    Approximately $2,400.00 in U.S. Currency;

3.    Approximately $2,000.00 in U.S. Currency;

4.    Approximately $1,000.00 in U.S. Currency;

5.    Approximately $1,200.00 in U.S. Currency;

6.    Approximately $400.00 in U.S. Currency;

7.    Approximately $1,300.00 in U.S. Currency;

8.    Approximately $2,200.00 in U.S. Currency;

9.    Approximately $2,000.00 in U.S. Currency;

10.    2019 Toyota Highlander, VIN: 5TDJZRFH6KS624526, License Number 8MWN102;

11.    2020 Toyota Rav4, VIN: 2T3PIRFV7LC067683, License Number 8YFF502;

12.    2020 Ford F-250 Truck, VIN: 1FT7W2BT8LEE33122, License Number 50042B3;

13.    2021 Tesla Model S, VIN: 5YJSAIE60MF438579, License Number 8YVC381;

14.    2021 Tesla Model 3, VIN: 5YJ3EIEC6MF077454, License Number 8YYM381;

15.    2021 Mazda Miata MX-5, VIN: JMINDAM71M0458921, License Number CB44S66;

16.    2013 Subaru BRZ, VIN: JFIZCAC15D1601032, License Number S826518;

17.    2000 Acura NSX, VIN: JH4NA2163YT000150, License Number 9BWF072;

18.    2021 Sea-Doo 12MJ00, VIN: YDV33995L021, License Number CF1846VU;

19.    2021 Sea-Doo 12MK00, VIN: YDV34086L021, License Number CF1847VU;

20.    2017 Toyota Tacoma, VIN: 3TMCZ5AN2HM097673, License Number 56740R2;

21.    2021 Sea-Doo RXT X 300, VIN: YDV98370F121, License Number CF6085VU;

22.    2021 Sea-Doo RXP-X300, VIN: YDV38789A121, License Number CF0470ZN;

23.    2021 Polaris ATV, VIN: 3NSPAL925MF146661, License Number BM4V62;

24.    2021 Polaris ATV, VIN: 3NSPAL924MG612753, License Number BPI T56;

25.    2021 MAXX-D Trailer, VIN: 5R8BC2023MM076705, License Number 4UA5825;

26.    2019 Toyota Camry SE, VIN: 4TIB11HK9KU836639, License Number 8FNX657;

27.    2011 Toyota Forklift, Model Number 8FGCU25, Serial Number 34709;

28.    1973 Toyota Celica, VIN: TA20060085, License Number 8GPV202;

29.    2021 Zieman J2 Trailer, VIN: 1ZCS15018MZ359258, License Number 4TY8758;

30.    2019 Karavan Trailer, VIN: 5KTWS1714KF546822, License Number 4SR2992;

PLEA AGREEMENT

6

31.   Skunk Racing Engine and Transmission;

32.   Dynapack Dynamometer;

33.   Pallet Shrink Wrapping Machine PEC-PW-B02, Serial Number 201204;

34.   IPG Lightweld 1500 Welder, Serial Number LWHH32104029;

35.   Baileigh Industrial, Model CS-350P, Cold Chop Saw and Pneumatic Vise;

36.   Approximately 1 pallet of catalytic converters;

37.   Approximately 12 catalytic converters;

38.   Platinum diamond wedding ring set;

39.   Gold necklace with gold heart pendant;

40.   Thick gold necklace with gold dragon shaped pendant;

41.   Thin gold necklace with gold rectangular pendant inscribed with a "L";

42.   Thin gold necklace and gold rectangular pendant inscribed with a "J" and broken gold necklace;

43.   Gold necklace with gold heart pendant containing a synthetic ruby, gold cable link necklace, and two pairs of gold earrings;

44.   Approximately 9 large silver bars and 8 small silver bars;

45.   Approximately 84 Piastre Indo-China (Vietnam) silver coins and 2 Mexican Republic silver coins;

46.   Approximately $2,580.67 seized from Wells Fargo Bank account number 1964137846;

47.   2017 Chevrolet SS, VIN: 6G3F25RW8HL300262, License Number 8THL966;

48.   2017 Chevrolet SS, VIN: 6G3F15RW7HL300143, License Number 8RNK772;

49.   Approximately $10,950.00 in the form of a Cashier's Check;

50.   Real property located at 8201 Home Country Way, Sacramento, California, Sacramento County, APN: 115-0252-015-0000; and

51.   Real property located at 6148 20th Street, Rio Linda, California, Sacramento County, APN: 215-0111-001-0000.

PLEA AGREEMENT

7

1    The defendant agrees that the listed assets constitute property that was involved in, proceeds of

2    and traceable to, and/or facilitated violations of 18 U.S.C. §§ 371, 1956(a)(1)(B)(i), 1956(h), 1957(a),

3    2314 or 31 U.S.C. §§ 5324(a)(3), 5324(d)(2).

4    The defendant agrees to fully assist the government in the forfeiture of the listed assets and to

5    take whatever steps are necessary to pass clear title to the United States.  The defendant shall not sell,

6    transfer, convey, or otherwise dispose of any of his assets, including but not limited to, the above-listed

7    assets.

8    The defendant agrees not to file a claim to any of the listed property in any civil proceeding,

9    administrative or judicial, which may be initiated.  The defendant agrees to waive his right to notice of

10   any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a

11   claim in that forfeiture proceeding.

12   The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of

13   assets.  The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses

14   to the forfeiture of these assets in any proceeding.  The defendant agrees to waive any jeopardy defense,

15   and agrees to waive any claim or defense under the Eighth Amendment to the United States

16   Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States,

17   the State of California or its subdivisions.

18   The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any

19   defenses or defects that may pertain to the forfeiture.

20   **F.    Asset Disclosure.**

21   The defendant agrees to make a full and complete disclosure of his assets and financial

22   condition, and will complete the United States Attorney's Office's "Authorization to Release

23   Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the

24   defendant's change of plea, including supporting documentation.  The defendant also agrees to have the

25   Court enter an order to that effect.  The defendant understands that if he fails to complete truthfully and

26   provide the described documentation to the United States Attorney's Office within the allotted time, he

27   will be considered in violation of the agreement, and the government shall be entitled to the remedies set

28   forth in section II.D above.

PLEA AGREEMENT                                      8

1    Defendant expressly authorizes the United States to immediately obtain a credit report to

2 evaluate defendant's ability to satisfy any monetary penalty imposed by the court.  Defendant also

3 authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held

4 by the U.S. Probation Office.

### III.    THE GOVERNMENT'S OBLIGATIONS

**A.    Recommendations.**

1.    Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the

applicable guideline range as determined by the Court.

2.    Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than

16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if

the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G.

§ 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation

of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise

engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either

in the preparation of the pre-sentence report or during the sentencing proceeding.

**B.    Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation,

including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate

statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also

understands and agrees that nothing in this Plea Agreement bars the government from defending on

appeal or collateral review any sentence that the Court may impose.

### IV.    ELEMENTS OF THE OFFENSES

At a trial, the government would have to prove beyond a reasonable doubt the following

elements of the offenses to which the defendant is pleading guilty, Conspiracy to Commit Interstate

Transportation of Stolen Property in violation of 18 U.S.C. § 371:

1.   There was an agreement between two or more persons to commit Interstate

PLEA AGREEMENT                                              9

Transportation of Stolen Property;

2. Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The elements the government must prove beyond a reasonable doubt for a violation of 18 U.S.C. § 2314, Interstate Transportation of Stolen Property, are:

1. Defendant transported stolen property between one state and another;

2. At the time the property crossed the state border, the defendant knew it was stolen;

3. The defendant intended to deprive the owner of the ownership of the property temporarily or permanently; and

4. The property had a value of $5,000 or more.

The elements the government must prove beyond a reasonable doubt for a violation of 18 U.S.C. § 1956(h), Money Laundering Conspiracy, are:

1. There was an agreement to commit money laundering;

2. Defendant knew the objective of the agreement;

3. Defendant joined the agreement with the intent to further its unlawful purpose.

The elements the government must prove beyond a reasonable doubt for a violation of 31 U.S.C. § 5324(a)(3) and (d)(2), Structuring Currency Transactions, are:

1. Defendant knew of the domestic financial institution's obligation to report currency transactions in excess of $10,000;

2. Defendant purposefully structured a currency transaction with one or more domestic financial institutions the intent to evade that reporting requirement; and

3. Defendant acted with knowledge that the structuring the defendant undertook was unlawful.

The elements the government must prove beyond a reasonable doubt for a violation of 18 U.S.C. § 1957(a), Monetary Transactions with Proceeds of Specified Unlawful Activity, are:

1. Defendant knowingly engaged or attempted to engage in a monetary transaction;

PLEA AGREEMENT

10

2.  Defendant knew the transaction involved criminally derived property;

3.  The property had a value greater than $10,000;

4.  The property was, in fact, derived from Interstate Transportation of Stolen Property; and

5.  The transaction occurred in the United States.

The elements the government must prove for a violation of 18 U.S.C. § 1956(a)(1)(B)(i), Concealment Money Laundering, are:

1.  Defendant conducted a financial transaction involving property that represented the proceeds of Interstate Transportation of Stolen Property;

2.  Defendant knew that the property represented the proceeds of Interstate Transportation of Stolen Property;

3.  Defendant knew that the transaction was designed in whole or in part to conceal or disguise the source of the proceeds.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.      MAXIMUM SENTENCE

### A.      Maximum Penalty.

The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate (Count 1), is five years of incarceration, a fine of $250,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering (Count 2), is 20 years of incarceration, a fine of $500,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

The maximum sentence that the Court can impose for each violation of 18 U.S.C. § 2314 – Interstate Transport of Stolen Property (Counts 3-6), is 10 years of incarceration, a fine of $250,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

The maximum sentence that the Court can impose for each violation of 31 U.S.C. § 5324(a)(3) and (d)(2) – Structuring Currency Transactions (Counts 7-19), is 10 years of incarceration, a fine of $250,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

The maximum sentence that the Court can impose for each violation of 18 U.S.C. § 1957(a) – Monetary Transactions with Proceeds of Specified Unlawful Activity (Counts 20-36), is 10 years of incarceration, a fine of $250,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

The maximum sentence that the Court can impose for each violation of 18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money Laundering (Counts 37-40), is 20 years of incarceration, a fine of $250,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

Accordingly, the maximum period of incarceration that the Court can impose for all Counts defendant is pleading guilty to is 445 years imprisonment.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which he is pleading guilty.  The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.      Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to three additional years imprisonment.

**VI.      SENTENCING DETERMINATION**

**A.      Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the

PLEA AGREEMENT

12

1    Sentencing Guidelines and must take them into account when determining a final sentence.  The

2    defendant further understands that the Court will consider whether there is a basis for departure from the

3    guideline sentencing range (either above or below the guideline sentencing range) because there exists

4    an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

5    consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further

6    understands that the Court, after consultation and consideration of the Sentencing Guidelines, must

7    impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

8          **B.      Estimated Guideline Calculation.**

9          The government and the defendant agree that the following is their present best estimate of the

10   sentencing guidelines variables.  These estimates shall not be binding on the Court, the Probation Office,

11   or the parties:

12         Stipulations Affecting Guideline Calculation:  The government and the defendant agree that

13   there is no material dispute as to the following Sentencing Guidelines variables and therefore stipulate to

14   the following:

15         1.    Base Offense Level (2B1.1(a)(1)):                                          7

16         2.    Loss Amount greater than $25 million (2B1.1(b)(1)(L)):                     +22

17         3.    Involved receiving stolen property and in the business of selling
               and receiving stolen property (2B1.1(b)(4)):                              +2
18

19         4.    Organized scheme to steal or receive stolen vehicle parts
               (2B1.1(b)(15)(A)):                                                        +2

20         5.    Acceptance of Responsibility:  See paragraph III.A.2 above              - 3

21         6.    Total Offense Level:                                                     30

22         7.    Criminal History:  The parties estimate, but do not stipulate, that the defendant's
               criminal history category will be IV.
23
           8.    Sentencing Range:  135-168 months (The defendant understands that if the
24             criminal history category differs from the parties' estimate, his Guidelines sentencing
               range may differ from that set forth here.)
25
           The parties agree that they will not seek or argue in support of any other specific offense
26
     characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"),
27
     or cross-references.  Both parties agree not to move for, or argue in support of, any departure from the
28

PLEA AGREEMENT                                    13

1 Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under <u>United States</u>

2 <u>v. Booker</u>, 543 U.S. 220 (2005).

3       The defendant is free to recommend to the Court whatever sentence he believes is appropriate

4 under 18 U.S.C. § 3553(a).

**VII.       WAIVERS**

6       **A.       Waiver of Constitutional Rights.**

7       The defendant understands that by pleading guilty he is waiving the following constitutional

8 rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

9 be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative

10 defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of

11 conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to

12 testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be

13 compelled to incriminate himself.

14      **B.       Waiver of Appeal and Collateral Attack.**

15      The defendant understands that the law gives the defendant a right to appeal his guilty plea,

16 conviction, and sentence.  The defendant agrees as part of his pleas, however, to give up the right to

17 appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not

18 exceed the statutory maximums for the offenses to which he is pleading guilty.  The defendant

19 understands that this waiver includes, but is not limited to, any and all constitutional and/or legal

20 challenges to the defendant's conviction and guilty pleas, including arguments that the statutes to which

21 defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts

22 attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant

23 specifically gives up the right to appeal any order of restitution the Court may impose.

24      Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

25 one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

26 statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant

27 understands that these circumstances occur infrequently and that in almost all cases this Agreement

28 constitutes a complete waiver of all appellate rights.

PLEA AGREEMENT                                    14

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in Section III above, if the defendant ever attempts to vacate his pleas, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.D herein.

### C.    Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### D.    Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty.  Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

### VIII.    ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

//

PLEA AGREEMENT

15

IX.     APPROVALS AND SIGNATURES

A.     **Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated:  7/30/23

_____
DOUGLAS BEEVERS
Attorney for Defendant

B.     **Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this plea agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.  Finally, I am satisfied with the representation of my attorney in this case.

Dated:  7/30/23

_____
TOU SUE VANG
Defendant

C.     **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated:  10/10/2023

PHILLIP A. TALBERT
United States Attorney

_____
VERONICA M.A. ALEGRÍA
Assistant United States Attorney

PLEA AGREEMENT                                          16

EXHIBIT "A"

Factual Basis for Plea

Thieves steal catalytic converters from vehicles for the precious metals they contain, which may be more valuable per ounce than gold.  Catalytic converter theft has become popular across the nation because of their value, relative ease to steal, and their lack of identifying markings.

DG Auto Parts LLC aka DG Auto Wreckers aka Blacey's Auto ("DG AUTO") was a criminal enterprise that received large shipments of stolen catalytic converters from its affiliates and franchisees across the nation.  DG AUTO used its specialized equipment to "de-can" the catalytic converters it received and then sold the resulting powdered precious metals to a metal refinery.  From at least October 2019 through October 2022, NAVIN KHANNA aka Lovin Khanna, TINU KHANNA aka Gagan Khanna, DANIEL DOLAN, CHI MO aka David Mo, WRIGHT LOUIS MOSLEY, and ISHU LAKRA operated DG AUTO and conspired, confederated, and agreed with each other to purchase and transport stolen catalytic converters from California and other states to the state of New Jersey.

In the Sacramento area, TOU SUE VANG, ANDREW VANG, and MONICA MOUA operated VANG AUTO, through which they knowingly purchased stolen catalytic converters from local thieves.  They operated primarily from their private residences and storage units, and they did not have a scrap yard or valid business license.  T. VANG and A. VANG opened and controlled bank accounts in the name of VANG AUTO.  VANG AUTO shipped stolen catalytic converters across state lines to DG AUTO in New Jersey.  Some of these shipments were over 1,000 pounds and contained a single type of high-value catalytic converter, such as the Toyota Prius.  For example:

1.  On September 3, 2020, T. VANG shipped approximately 300 stolen Toyota Prius catalytic converters from California to N. KHANNA and DG AUTO in New Jersey in return for $400,000 wired to a VANG AUTO bank account.

2.  On April 13, 2021, T. VANG shipped two boxes of stolen catalytic converters (one of over 200 high-value Honda "4x4" converters) with a combined weight of 4,370 pounds to N. KHANNA and DG AUTO in New Jersey in return for $975,500.

3.  On January 24, 2022, T. VANG shipped two boxes of stolen catalytic converters (one of over 500 Toyota Prius catalytic converters) with a combined weight of 2,776 pounds from VANG AUTO in California to N. KHANNA and DG AUTO in New Jersey in return for $405,035.

4.  On February 8, 2022, T. VANG shipped three boxes of stolen catalytic converters (one of high-value Honda "4x4" converters) with a combined weight of 4,417 pounds from California to N. KHANNA and DG AUTO in New Jersey in return for $270,335.

DG AUTO accounts wired VANG AUTO accounts over $38 million in return for stolen catalytic converters shipped from California to New Jersey.  T. VANG and A. VANG used the funds they received from N. KHANNA and T. KHANNA and withdrew cash from the VANG AUTO bank accounts they controlled to purchase more stolen catalytic converters, thereby promoting the carrying on of the unlawful activity.

TOU SUE VANG, ANDREW VANG, and MONICA MOUA also conspired, confederated, and agreed with each other to purchase purportedly stolen catalytic converters from a person they did not know was actually a Confidential Informant for the purpose of transporting these purportedly stolen catalytic converters from California to New Jersey.  These included the following transactions:

1.  On May 4, 2021, T. VANG and A. VANG purchased three purportedly stolen catalytic converters for $600 in currency from the Confidential Informant at the VANG FAMILY's previous joint residence on Meadowgate Drive (the "Meadowgate Residence").

PLEA AGREEMENT                                                    A-1

2. On May 19, 2021, T. VANG, A. VANG, and MOUA purchased two purportedly stolen catalytic converters (a Toyota Prius catalytic converter and a Mercedes catalytic converter) from the Confidential Informant for $1,600 in currency at the Meadowgate Residence. The Confidential Informant told A. VANG that it was hard to get Prius catalytic converters, but the Confidential Informant "stole" this catalytic converter from a Prius and it was "the second time" that the Confidential Informant "took" the catalytic converter from the same Toyota Prius. In response, T. VANG admonished the Confidential Informant, saying, "For future reference, don't say they are stolen." T. VANG and A. VANG discussed the price, and T. VANG determined the final price of $1,600, which A. VANG handed to the Confidential Informant in currency. MOUA was also present during the transaction.

3. On June 9, 2021, A. VANG purchased two purportedly stolen Toyota Prius catalytic converters for $2,400 in currency from the Confidential Informant at the Meadowgate Residence. The Confidential Informant told A. VANG that the Confidential Informant had received the two Toyota Prius catalytic converters from a Toyota warehouse employee who "stole" them for the Confidential Informant. After paying the Confidential Informant from a cash counting machine, A. VANG asked the Confidential Informant if the warehouse employee could get him a headlight.

4. On July 1, 2021, A. VANG purchased two purportedly stolen catalytic converters for $2,200 in currency from the Confidential Informant at the Meadowgate Residence.

5. On July 15, 2021, T. VANG and A. VANG purchased two purportedly stolen catalytic converters for $2,400 in currency from the Confidential Informant at the Meadowgate Residence.

6. On August 25, 2021, A. VANG and MOUA purchased two purportedly stolen Toyota Prius catalytic converters for $2,000 in currency at the Meadowgate Residence. MOUA told the Confidential Informant to conceal the catalytic converters when bringing them into the Meadowgate Residence. A. VANG told the Confidential Informant, "See if you can cover it better," and explained that concealment was necessary because another customer had come to the Meadowgate Residence in a stolen car followed by the police, which "brought hella heat over [t]here" and so they were "telling people to cover up." MOUA provided the Confidential Informant $2,000 in currency for the converters.

Additionally, T. VANG was aware that banks had reporting requirements for the withdrawal of cash in excess of $10,000 and that it was a crime to structure cash withdrawals to avoid those reporting requirements. Despite this knowledge, T. VANG made structured $10,000 cash withdrawals from a VANG AUTO bank account three or more times a day from different Bank of America branches to avoid bank reporting requirements from November 5, 2019, to January 23, 2020, at the dates, locations, and amounts stated in the indictment.

Additionally, T. VANG engaged in the following monetary transactions and purchased the following assets using proceeds from the sale of stolen catalytic converters and their shipment from VANG AUTO in California to DG AUTO in New Jersey, some of which he purchased in the names of straw buyers to conceal that they were purchased using illegal proceeds:

- A 2020 Toyota Rav4 (VIN: 2T3PIRFV7LC067683), purchased from Roseville Toyota for approximately $34,000, registered in the name of MOUA, on or about December 29, 2019, paid for via a debit card associated to a VANG AUTO bank account in the amount of $34,000.

- A 2019 Toyota Highlander (VIN: 5TDJZRFH6KS624526), purchased from Elk Grove Toyota for approximately $48,339 on November 18, 2019, paid in part via a cashier's check from a VANG AUTO bank account for $29,275.43.

- A July 9, 2020, $30,000.00 wire transfer from a VANG AUTO bank account to Rick Hollenback/Synergy Motorsports.

- A July 14, 2020, $15,000.00 wire transfer from a VANG AUTO bank account to Rick Hollenback/Synergy Motorsports.

PLEA AGREEMENT                                            A-2

- A 2020 Ford F-250 pickup (VIN: 1FT7W2BT8LEE33122), purchased on September 17, 2020, via a $40,613.35 cashier's check # 0030505367 drawn on a VANG AUTO bank account, paid to Elk Grove Ford and registered in the name of a straw buyer.

- A November 10, 2020, $60,000.00 wire transfer from a VANG AUTO bank account to Koza Automotive and Performance.

- Two wire transactions for the close of escrow on December 18, 2020, from a VANG AUTO bank account for $423,514.30 to First American Title Company escrow number 3402-6450858 for real property located at 8201 Home Country Way, Sacramento, California (Sacramento County APN: 115-0252-015-0000) in the name of T. VANG.

- A March 18, 2021, $82,650.00 wire transfer from a VANG AUTO bank account to Dynapack International LLC to purchase a Dynamo Meter.

- A May 4, 2021, $24,500.00 wire transfer from a VANG AUTO bank account to Dynapack International LLC.

- A July 9, 2021, $25,000.00 wire transfer from a VANG AUTO bank account to Koza Automotive and Performance.

- A 2021 Tesla Model S "Plaid" Edition (VIN: 5YJSA1E60MF438579) purchased from Tesla Motors for a total of $142,355.13 on or about August 31, 2021, registered in the name of a straw buyer, paid for via electronic transfers to Tesla Motors of $1,000 on February 14, 2021, from a debit card linked to a VANG AUTO bank account, and of $141,355.13 from a VANG AUTO bank account on August 31, 2021.

- A 2021 Tesla Model 3 (VIN: 5YJ3E1EC6MF077454) purchased from Tesla Motors for $62,488.51 on or about September 28, 2021, via wire transfers from a VANG AUTO bank account, and registered in the name of a straw buyer.

- A November 3, 2021, $24,437.50 wire transfer from a VANG AUTO bank account to Dynapack International LLC.

- Real property located at 6148 20th Street, Rio Linda, California (Sacramento County APN: 215-0111-001-0000), purchased for $1,236,222.25, via wire transfers on December 13 and 20, 2021, from a VANG AUTO bank account to Stewart Title Company escrow number DG-54638454-NM, titled in the names of straw buyers to conceal the source of the proceeds.

- A 2000 Acura NSX coupe (VIN: JH4NA2163YT000150) purchased from a private party for $140,000 via a wire transfer from a VANG AUTO bank account.

- A 2013 Subaru BRZ (VIN: JF1ZCAC15D1601032) purchased from a private party via a $40,000.00 wire transfer from a VANG AUTO bank account.

- A 2020 Toyota Tundra (VIN: 5TFDY5F10LX947512) purchased from Roseville Toyota on August 7, 2020, for $65,375 in U.S. currency, registered in the name of a straw buyer.

- Two 2021 SeaDoos (VIN: YDV33995L021 and VIN: YDV34086L021) and a Zieman J2 trailer (VIN: 1ZCS15018MZ359258), purchased with approximately $42,319 in U.S. currency from Roseville Power Sports, all registered in the name of a straw buyer, on or about April 9, 2021.

I, TOU SUE VANG, have read and carefully reviewed the above Exhibit A: Factual Basis for Plea with my attorney. The facts described above are true and I adopt this Factual Basis as my own true statement.

Dated: _____

_____
TOU SUE VANG
Defendant

PLEA AGREEMENT                                      A-3