PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ANDREW VANG,<br><br>　　　　　　　　Defendant. | CASE NO. 22-0213-KJM<br><br>PLEA AGREEMENT<br><br>DATE:　OCTOBER 30, 2023<br>TIME:　9:00 A.M.<br>COURT:　Hon. KIMBERLY J. MUELLER |

## I.　INTRODUCTION

**A.　Scope of Agreement.**

The indictment in this case charges the defendant with violations of 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate (Count 1), and 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering (Count 2). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.　Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

concerning the criminal activities of defendant, including activities which may not have been charged in the indictment.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to a violation of 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate (Count 1).  The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

      1. Package Agreement:

The defendant acknowledges and understands that the plea offer made to him here by the government is a "package offer."  That is, the defendant understands that the offer made to him is conditioned on co-defendants TOU SUE VANG and MONICA MOUA pleading guilty according to the terms of his/her respective plea offers.  The defendant understands that if either of these co-defendants

declines, refuses or fails to plead guilty according to his/her respective offer, then, at the option of the government, the defendant will not be allowed to enter a plea of guilty to the offer made to him by the government. Additionally, if either of the co-defendants TOU SUE VANG or MONICA MOUA fails or refuses to enter his or her plea according to his or her respective offer and the defendant has already entered his plea, then this plea agreement is voidable at the option of the government. In its sole discretion, the government has the ability to withdraw from the plea agreement with the defendant and pursue the original charges as to this defendant. However, the defendant's waiver of his rights under Rule 11(f) and Fed. R. Evid. 410, as set forth in Section II.A herein, will not operate.

Recognizing that this is a package offer, the defendant confirms that he has not been threatened, pressured, or coerced by any other person, including the co-defendants, to enter into this plea agreement. The defendant also confirms that he enters into this plea agreement voluntarily because he is in fact guilty of the offenses to which he is pleading guilty.

**B.    Fine.**

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

**C.    Special Assessment.**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

D. **Violation of Plea Agreement by Defendant/Withdrawal of Plea.**

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**E.    Forfeiture.**

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title, and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Those assets include, but are not limited to, the following:

1. Approximately $152,783.00 in U.S. Currency,
2. Approximately $2,400.00 in U.S. Currency,
3. Approximately $2,000.00 in U.S. Currency,
4. Approximately $1,000.00 in U.S. Currency,
5. Approximately $1,200.00 in U.S. Currency,
6. Approximately $400.00 in U.S. Currency,
7. Approximately $1,300.00 in U.S. Currency,
8. Approximately $2,200.00 in U.S. Currency,
9. Approximately $2,000.00 in U.S. Currency,
10. 2011 Toyota Forklift, Model Number 8FGCU25, Serial Number 34709,
11. 2012 Toyota Tundra-Platinum, VIN: 5TFHY5Fl5CX219122, License Number 76655El,
12. Skunk Racing Engine and Transmission,
13. Dynapack Dynamometer,
14. Pallet Shrink Wrapping Machine PEC-PW-B02, Serial Number 201204,
15. IPG Lightweld 1500 Welder, Serial Number LWHH32104029,
16. Baileigh Industrial, Model CS-350P, Cold Chop Saw and Pneumatic Vise,
17. Approximately 1 pallet of catalytic converters,
18. Approximately 12 catalytic converters,
19. Gold necklace with gold heart pendant,
20. Thick gold necklace with gold dragon shaped pendant,
21. Thin gold necklace with gold rectangular pendant inscribed with a "L",
22. Thin gold necklace and gold rectangular pendant inscribed with a "J" and broken gold necklace,
23. Gold necklace with gold heart pendant containing a synthetic ruby, gold cable link necklace, and two pairs of gold earrings,
24. Approximately 9 large silver bars and 8 small silver bars,
25. Approximately 84 Piastre Indo-China (Vietnam) silver coins and 2 Mexican Republic silver coins,
26. Approximately $2,580.67 seized from Wells Fargo Bank account number 1964137846,
27. 2017 Chevrolet SS, VIN: 6G3F25RW8HL300262, License Number 8THL966, and
28. 2017 Chevrolet SS, VIN: 6G3F15RW7HL300143, License Number 8RNK772.

The defendant agrees that the listed assets constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 371.

The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell, transfer, convey, or otherwise dispose of any of his assets, including but not limited to, the above-listed assets.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions. The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

F.   **Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.D above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also

authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

### III.    THE GOVERNMENT'S OBLIGATIONS

#### A.    Dismissals/Other Charges.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.D (Violation of Plea Agreement by Defendant/Withdrawal of Plea), VI.B (Stipulated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

#### B.    Recommendations.

##### 1.    Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range as determined by the Court.

##### 2.    Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

#### C.    Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV.   ELEMENTS OF THE OFFENSES

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty, Conspiracy to Commit Interstate Transportation of Stolen Property in violation of 18 U.S.C. § 371:

1. There was an agreement between two or more persons to commit Interstate Transportation of Stolen Property;
2. Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and
3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The elements for a violation of 18 U.S.C. § 2314, Interstate Transportation of Stolen Property, are:

1. Defendant transported stolen property between one state and another;
2. At the time the property crossed the state border, the defendant knew it was stolen;
3. The defendant intended to deprive the owner of the ownership of the property temporarily or permanently; and
4. The property had a value of $5,000 or more.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

### V.   MAXIMUM SENTENCE

**A.   Maximum Penalty.**

The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate (Count 1), is five years of incarceration, a fine of $250,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

**B.   Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during

the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to three additional years imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Stipulations Affecting Guideline Calculation.

The government and the defendant agree that there is no material dispute as to the following Sentencing Guidelines variables and therefore stipulate to the following:

1. Base Offense Level (2B1.1(a)(1)): 6
2. Loss Amount greater than $25 million (2B1.1(b)(1)(L)): +22
3. Involved receiving stolen property and in the business of selling and receiving stolen property (2B1.1(b)(4)): +2
4. Organized scheme to steal or receive stolen vehicle parts (2B1.1(b)(15)(A)): +2
5. Acceptance of Responsibility: See paragraph III.B.2 above - 3
6. Total Offense Level: 29
7. Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be I.
8. Sentencing Range: 60 months (The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.)

PLEA AGREEMENT 9

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references.  Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220 (2005).

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a).

### VII.   WAIVERS

#### A.   Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

#### B.   Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence.  The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which he is pleading guilty.  The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in Section III above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.D herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition

1  exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and
2  counsel for the United States.

### IX. APPROVALS AND SIGNATURES

#### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 10-2-23

_____
TODD D. LERAS
Attorney for Defendant

#### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 10-2-2023

_____
ANDREW VANG
Defendant

#### C. Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: 10/10/2023

PHILLIP A. TALBERT
United States Attorney

_____
VERONICA M.A. ALEGRÍA
Assistant United States Attorney

12

EXHIBIT "A"

Factual Basis for Plea

Thieves steal catalytic converters from vehicles for the precious metals they contain, which may be more valuable per ounce than gold. Catalytic converter theft has become popular across the nation because of their value, relative ease to steal, and their lack of identifying markings.

DG Auto Parts LLC aka DG Auto Wreckers aka Blacey's Auto ("DG AUTO") was a criminal enterprise located in New Jersey that received large shipments of stolen catalytic converters from its affiliates and franchisees across the nation. DG AUTO used its specialized equipment to "de-can" the catalytic converters it received and then sold the resulting powdered precious metals to a metal refinery.

In the Sacramento area, TOU SUE VANG, ANDREW VANG, and MONICA MOUA operated VANG AUTO, through which they knowingly purchased stolen catalytic converters from local thieves. They operated primarily from their private residences and storage units, and they did not have a scrap yard or valid business license.

T. VANG and A. VANG opened and controlled bank accounts in the name of VANG AUTO. VANG AUTO shipped stolen catalytic converters across state lines to DG AUTO in New Jersey. Some of these shipments were over 1,000 pounds and contained a single type of high-value catalytic converter, such as the Toyota Prius. These shipments had a value of greater than $5,000. For example:

1. On September 3, 2020, T. VANG shipped approximately 300 stolen Toyota Prius catalytic converters from California to N. KHANNA and DG AUTO in New Jersey in return for $400,000 wired to a VANG AUTO bank account.

2. On April 13, 2021, T. VANG shipped two boxes of stolen catalytic converters (one of over 200 high-value Honda "4x4" converters) with a combined weight of 4,370 pounds to N. KHANNA and DG AUTO in New Jersey in return for $975,500.

3. On January 24, 2022, T. VANG shipped two boxes of stolen catalytic converters (one of over 500 Toyota Prius catalytic converters) with a combined weight of 2,776 pounds from VANG AUTO in California to N. KHANNA and DG AUTO in New Jersey in return for $405,035.

4. On February 8, 2022, T. VANG shipped three boxes of stolen catalytic converters (one of high-value Honda "4x4" converters) with a combined weight of 4,417 pounds from California to N. KHANNA and DG AUTO in New Jersey in return for $270,335.

A. VANG acted to support the conspiracy to transport these and other shipments of stolen catalytic converters from California to New Jersey. For example:

1. On August 6, 2020, at a Wells Fargo bank in Sacramento, California, A. VANG withdrew $250,000 in U.S. currency from the VANG AUTO account ending in 7846 and placed it in a green shopping bag. This currency was payment for the shipment of stolen catalytic converters to New Jersey.

2. On July 15, 2021, A. VANG drove his Toyota Tundra truck to StoragePRO in Stockton, California, and loaded it with approximately 50-100 catalytic converters. Then A. VANG transported the catalytic converters to a small warehouse in Elk Grove, California, controlled by VANG AUTO, wherefrom stolen catalytic converters were shipped to New Jersey.

DG AUTO accounts controlled by NAVIN KHANNA and TINU KHANNA wired VANG AUTO accounts controlled by A. VANG and T. VANG over $38 million in return for stolen catalytic converters shipped from California to New Jersey. T. VANG and A. VANG withdrew U.S. currency from the VANG AUTO bank accounts. A. VANG withdrew over $27 million in U.S. currency from the

VANG AUTO account ending in 7846. Much of this U.S. currency was used to pay thieves and purchase more stolen catalytic converters, thereby promoting the carrying on of the unlawful activity.

I, ANDREW VANG, have read and carefully reviewed the above Exhibit A: Factual Basis for Plea with my attorney. The facts described above are true and I adopt this Factual Basis as my own true statement.

Dated: 10-2-2023

_____
ANDREW VANG
Defendant