ERIC GRANT
United States Attorney
VERONICA M.A. ALEGRÍA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

DAVID L. JAFFE
United States Department of Justice
Chief, Violent Crime and Racketeering Section
CÉSAR RIVERA-GIRAUD
Trial Attorney
1301 New York Ave., NW, Suite 700
Washington, DC 20005
Telephone:  (202) 878-9352
Facsimile:  (202) 307-3944

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:22-CR-0213 DC |
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| NAVIN KHANNA,<br>    aka Lovin Khanna, | |
| Defendant. | |

I.    **INTRODUCTION**

A.    **Scope of Agreement.**

The superseding indictment filed in this case charges the defendant with violations of 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate (Count One), 18 U.S.C. § 1956(h) – Conspiracy to Commit Promotional Money Laundering (Count Two), and 18 U.S.C. § 2314 – Interstate Transportation of Stolen Property (Counts Three through Six).  This document contains the complete

plea agreement between the United States Attorney's Office for the Eastern District of California (the "government"), and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.     Dual Plea Agreements.**

The defendant acknowledges and understands he is also pleading guilty pursuant to a separate plea agreement to different crimes charged in the Northern District of Oklahoma in *United States v. Navin Khanna*, (case no. 22-CR-0348).  The defendant agrees that this plea agreement is conditional upon the defendant also pleading guilty to the crimes charged in the Northern District of Oklahoma case.

Additionally, before this plea agreement can be effectuated, the defendant must sign a Consent to Transfer form under Rule 20(a) of the Federal Rules of Criminal Procedure that will transfer the Northern District of Oklahoma case to the to the U.S. District Court in the Eastern District of California for defendant's sentencing hearing.  The defendant further understands and agrees that pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, upon his entry of plea in the Northern District of Oklahoma, that case shall be transferred to the Eastern District of California for the convenience of the parties and in the interest of justice.  The parties shall jointly move for transfer of proceedings to the Eastern District of California at the conclusion of the Rule 11 hearing in the Northern District of Oklahoma.  The defendant understands and agrees that after he pleads guilty in the Northern District of Oklahoma, his case will be transferred and the U.S. District Court in the Eastern District of California will have jurisdiction to impose his sentence and enter final judgment in the Northern District of Oklahoma case.

The defendant acknowledges and agrees that he will still be bound by the terms of the plea agreement entered in the Northern District of Oklahoma, even after the transfer of the case to the Eastern District of California.

In addition to the waivers effectuated in the section of this plea agreement entitled "Waiver of Appeal and Collateral Attack," the defendant agrees as part of his pleas to waive any right to appeal the transfer of his case in the Northern District of Oklahoma in *United States v. Navin Khanna*, (case no. 22-CR-0348), pursuant to Rule 20, Rule 21, or both, to the U.S. District Court for the Eastern District of

California.  Additionally, the defendant gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging the transfer of his Northern District of Oklahoma case to the Eastern District of California.

### C. <u>Court Not a Party.</u>

The Court is not a party to this plea agreement.  Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the superseding indictments.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. <u>DEFENDANT'S OBLIGATIONS</u>

### A. <u>Guilty Plea.</u>

The defendant will plead guilty to 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate (Count One), 18 U.S.C. § 1956(h) – Conspiracy to Commit Promotional Money Laundering (Count Two), and 18 U.S.C. § 2314 – Interstate Transportation of Stolen Property (Counts Three through Six).  The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his pleas should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

1  guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f)

2  and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this

3  Agreement generally.

4        **1.**      **Package Agreement:**

5        The defendant acknowledges and understands that the plea offer made to him here by the

6  government is a "package offer."  That is, the defendant understands that the offer made to him is

7  conditioned on co-defendants TINU KHANNA, NIRMAL KHANNA, MICHAEL KHANNA, and

8  ANITA KHANNA pleading guilty according to the terms of their respective plea offers.  The defendant

9  understands that any of these co-defendants declines, refuses, or fails to plead guilty according to his/her

10 respective offer, then, at the option of the government, the defendant will not be allowed to enter a plea

11 of guilty to the offer made to him by the government.  Additionally, if co-defendants TINU KHANNA,

12 NIRMAL KHANNA, MICHAEL KHANNA, or ANITA KHANNA fails or refuses to enter his or her

13 plea according to his or her respective offer and the defendant has already entered his plea, then this plea

14 agreement is voidable at the option of the government.  In its sole discretion, the government has the

15 ability to withdraw from the plea agreement with the defendant and pursue the original charges as to this

16 defendant.  However, the defendant's waiver of his rights under Rule 11(f) and Fed. R. Evid. 410, as set

17 forth in Section II.A herein, will not operate.

18       Recognizing that this is a package offer, the defendant confirms that he has not been threatened,

19 pressured, or coerced by any other person, including the co-defendants, to enter into this plea agreement.

20 The defendant also confirms that he enters into this plea agreement voluntarily because he is in fact

21 guilty of the offenses to which he is pleading guilty.

22       **B.**      **Fine.**

23       The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a

24 fine, and that no fine should be imposed.  The defendant understands that it is his burden to affirmatively

25 prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury

26 to the Probation Officer and the government in advance of the issuance of the draft Presentence

27 Investigation Report, along with supporting documentation.  The government retains the right to oppose

28 the waiver of a fine.  If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered

by the Court, up to the statutory maximum fine for the defendant's offenses.

**C.      Special Assessment.**

The defendant agrees to pay a special assessment of $600 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.  If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**D.      Violation of Plea Agreement by Defendant/Withdrawal of Pleas.**

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein.  A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice.  The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge.  The decision to pursue any or all of these options is solely in the discretion of the government.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.  The defendant agrees not to raise any objections based on the passage of time with respect to such

counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.  The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**E.    Forfeiture.**

The defendant agrees to forfeit, pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), 28 U.S.C. § 2461, and Fed. R. Crim. P. 32.2(b)(1), the property constituting or derived from proceeds traceable to the offenses, and the property, used or intended to be used, to commit or to promote the commission of such offenses, including, but not limited to, the following:

### U.S. CURRENCY

1. All foreign currency seized from 3 Bucks Mill Lane, Holmdel, New Jersey, on or about November 2, 2022;

2. Approximately $1,062,199 in U.S. Currency seized, seized from 3 Bucks Mill Lane, Holmdel, New Jersey, on or about November 2, 2022;

3. Approximately $500,000 in U.S. Currency seized at Tulsa International Airport, on or about May 3, 2022;

4. Approximately $1,129,000 in U.S. Currency seized from a traffic stop on E. Hwy 60, Wynadotte, Oklahoma, on or about May 8, 2022;

5. Approximately $1,075,000 in U.S. Currency seized on or about May 11, 2022;

6. Approximately $20,000 in U.S. Currency seized from 242 Monmouth, Blacey's U-Pick Auto Parts, on or about November 2, 2022;

7. Approximately $30,116 in U.S. Currency seized from 242 Monmouth, Blacey's U-Pick Auto Parts, on or about November 2, 2022;

8. Approximately $29,877 in U.S. Currency seized from 242 Monmouth, DG Auto Parts, on or about November 2, 2022;

9. Approximately $16,356 in U.S. Currency seized from 220 Stokes Avenue, Ewing Township, New Jersey, on or about March 20, 2024;

10. Approximately $11,675 in U.S. Currency seized from 6796 Essington Ave., Philadelphia, Pennsylvania, on or about March 20, 2024;

**VEHICLES**

11. 2017 Lamborghini Huracan Convertible, VIN ZHWUR1ZF2HLA06147;

12. 2021 Mercedes Benz G63 AMG, VIN W1NYC7HJ1MX371237;

13. 2019 Ferrari 488 Pista, VIN ZFF90HLA6K0241124;

14. 2021 McLaren 765 LT Coupe, VIN SBM14RCA1MW765598;

15. 2021 Jeep Gladiator, VIN 1C6HJTAG9ML569941;

16. 2022 Mercedes Benz AMG GLE 53, VIN 4JGFD6BB1NA789319;

17. 2016 Porsche Cayman GT4, VIN WP0AC2A82GK191690;

18. 2023 Ford F650 Truck, VIN FDNF6AN8PDF00K763;

19. 2018 Ferrari 812 Coupe, VIN ZFF83CLAXJ0237484;

20. 2021 BMW M3 Coupe, VIN WBS43AY06NFN22745;

21. 2021 Tesla Model 3, VIN 5YJ3E1EB5MF862409;

**BANK ACCOUNTS**

22. Approximately $654,413.32 seized from Truist Bank Acct # 1310003465562, in the name of 242 Monmouth Road Corp. DBA Blacey's Auto Parts, on or about December 23, 2022;

23. Approximately $21,100.56 seized from Bank of America Acct #381069260940, in the name of 3D Auto Corp., on or about March 20, 2024;

24. Approximately $40,754.30 seized from Bank of America Acct # 381056687170, in the name of RECYCLEALLMETALS, LLC, on or about March 20, 2024;

25. Approximately $945.86 seized from Bank of America Acct # 381059917818, in the name of RECYCLEALLMETALS, LLC, on or about March 20, 2024;

26. Approximately $12,148.44 seized from Investors Acct. # 1808534, in the name of DG Auto Parts, LLC, on or about November 2, 2022;

27. Approximately $19,971.56 seized from Citizen Bank (formerly Investors Bank) Acct # 1808534, in the name of DG Auto Parts, LLC, on or about March 27, 2023;

28. Approximately $8,409.78 seized from Investors Acct. # 1001906426, on or about November 2, 2022;

29. Approximately $241.80 seized from Investors Acct. # 1001915510, in the name of DG Auto Parts, LLC, on or about November 2, 2022;

30. Approximately $13,168.21 seized from Wells Fargo Acct # 3219351644, on or about November 2, 2022;

31. Approximately $30,052.35 seized from Robinhood Investment Acct. # 122315385, on or about November 2, 2022;

32. Approximately $398.42 seized from TD Ameritrade Acct. # 490-073668, on or about November 2, 2022;

**JEWELRY**

33. A silver bracelet with clear stones in a Louis Vuitton bag, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

34. A silver and orange Hermes bracelet, item no. ZG3203FB175, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

35. A pair of silver earrings with clear stones, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

36. A rose gold, round edge bracelet with clear stones, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

37. A Rolex Oyster Perpetual Date Adjust watch, model no. 126610LN, serial no. 1CU40202, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

38. Two yellow bracelets with clear stones in a red box, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

39. A rose gold metal ring with red and clear stones, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

40. A Marc Ecko watch with silver band, model no. E10561G1, serial no. 00-829-1972, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

41. A Rolex watch with red and blue detail, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

42. A Rolex watch with black and gold detail, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

43. A Patek Philipe watch, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

44. A gold Rolex watch, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

45. A Hublot watch, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

46. A Rolex watch with black and silver detail, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

47. A blue Bentley Motors by Breitling watch, model no. A25363, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

**PERSONAL PROPERTY**

48. Seventeen (17) loose clear stones, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

49.  Thirteen (13) gold bars, seized from 3 Bucks Mill Lane, Holmdel, New Jersey on November 2, 2022;

**CATALYTIC CONVERTERS AND PRECIOUS METALS**

50. Approximately 82 pallets of catalytic converters, seized from 242 Monmouth Road, Wrightstown, New Jersey on November 2, 2022;

51. Approximately 5 pallets of catalytic converters, seized from 523-527 Okerson Road, Freehold, NJ on November 2, 2022;

52. Approximately 102 pallets of catalytic converters, seized from 109 Connecticut Drive, Burlington, New Jersey on November 2, 2022;

53. Approximately 32 pallets of precious metals, seized from 109 Connecticut Drive, Burlington, New Jersey on November 2, 2022;

54. Approximately 11 boxes of catalytic converters, seized from 242 Monmouth Road, Wrightstown, New Jersey on November 2, 2022;

55. Approximately 2 catalytic converters, seized from 242 Monmouth Road, Wrightstown, New Jersey on November 2, 2022;

56. Approximately 4 catalytic converters, seized from 3 Bucks Mill Lane, Holmdel, New Jersey;

## REAL ESTATE AND DEBT INSTRUMENTS

57. All that certain lot, tract, or parcel of land, with buildings and improvements thereon erected, situated, lying and being in the Township of Holmdel, County of Monmouth, State of New Jersey, known as 3 Bucks Mill Lane, Holmdel, New Jersey, APN: 07733-1756;

58. All that certain lot, tract, or parcel of land, with buildings and improvements thereon erected, situated, lying and being in the County of Burlington, State of New Jersey, known as 242 Monmouth Road, Wrightstown, New Jersey, APN: 08562-2250;

59. All that certain lot, tract, or parcel of land, with buildings and improvements thereon erected, situated, lying and being in the County of Monmouth, State of New Jersey, known as 18 Hanover Drive, Manalapan, New Jersey, APN:  07726-3615;

60. All that certain lot, tract, or parcel of land, with buildings and improvements thereon erected, situated, lying and being in the County Monmouth, State New Jersey, known as 18 Fisher Avenue, Neptune, New Jersey, APN: 35-00509-0000-00016; and

61. A Note secured by a Mortgage dated March 18, 2021, and filed in the County of Monmouth, New Jersey on April 1, 2021 (Book: OR-9497, Page: 1110) in the amount of $1,700,000, secured by real property located at 3 Bucks Mill Lane, Holmdel, New Jersey, APN: 20-00030-0000-0021-03.

The defendant agrees that the listed assets represent property connected to his crimes, constituting traceable proceeds or derivations thereof, and were used and intended to be used to commit criminal acts, and are therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), 28 U.S.C. § 2461, and Fed. R. Crim. P. 32.2(b)(1).

The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States, including, but not limited to, the execution of a consent decree of forfeiture and the completion of any other legal documents required for the transfer of title or ownership.  The defendant shall not sell, transfer, convey, or otherwise dispose of any of his assets, including but not limited to, the above-listed assets.

Defendant agrees that the forfeited property is subject to seizure and forfeiture by the United States, and that no defense exists to the seizure and forfeiture of this property by the United States.  As such, defendant hereby relinquishes all claim, title, and interest in the above-referenced property to the United States and agrees not to oppose any civil, administrative, or judicial forfeiture of the property.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated.  The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.  If defendant has filed a claim to the above-mentioned assets in any administrative or judicial forfeiture process, including in Northern District of Oklahoma Case No. 23-CV-223-SEH, defendant hereby agrees to withdraw it.  Defendant further agrees not to file a claim, on behalf of himself and/or on behalf of DG Auto LLC, DG Auto Parts, LLC and DG Auto South LLC, to the above identified assets or properties in any future forfeiture proceeding of whatever type.  In the event that the law enforcement agency having custody of the property decides not to pursue forfeiture of any of the seized property, defendant hereby abandons any interest in such property and consents to its destruction by, and/or abandonment to, the law enforcement agency.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets.  The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding.  The defendant agrees to waive any jeopardy defense and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions.  The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

**F.    Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation.  The defendant also agrees to have the Court enter an order to that effect.  The defendant understands that if he fails to complete truthfully and

provide the described documentation to the United States Attorney's Office within the allotted time, he

will be considered in violation of the agreement, and the government shall be entitled to the remedies set

forth in section II.D above.

Defendant expressly authorizes the United States to immediately obtain a credit report to

evaluate defendant's ability to satisfy any monetary penalty imposed by the court.  Defendant also

authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held

by the U.S. Probation Office.

**G.    Agreement to Cooperate.**

The defendant agrees to cooperate fully with the government and any other federal, state, or local

law enforcement agency, as directed by the government.  As used in this plea agreement, "cooperation"

requires the defendant:  (1) to respond truthfully and completely to all questions, whether in interviews,

in correspondence, telephone conversations, before a grand jury, or at any trial or other court

proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the

defendant's presence is requested by the government or compelled by subpoena or court order; (3) to

produce voluntarily any and all documents, records, or other tangible evidence requested by the

government; (4) not to participate in any criminal activity while cooperating with the government; and

(5) to disclose to the government the existence and status of all money, property, or assets, of any kind,

derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal

activities or the illegal activities of any conspirators.

**III.    THE GOVERNMENT'S OBLIGATIONS**

**A.    Recommendations.**

1.    Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the

applicable guideline range as determined by the Court.

2.    Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a

three-level reduction (if the offense level reaches 16) in the computation of his offense level if the

defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. §

3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### 3.    Concurrent Sentence and Relevant Conduct

The government will recommend that defendant's sentences imposed in the Northern District of Oklahoma case and the Eastern District of California case run concurrently.

The parties agree that the crimes charged in the Northern District of Oklahoma case constitute relevant conduct for the crimes charged in this Eastern District of California case; furthermore, the crimes charged in the Eastern District of California case constitute relevant conduct for the crimes charged in the Northern District of Oklahoma case.

### 4.    Reduction of Sentence for Cooperation.

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if he provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1.  The defendant understands that he must comply with paragraphs II.G and not violate this plea agreement as set forth in paragraph II.D herein. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.

The defendant understands that the government may recommend a reduction in his sentence of less than 50% or no reduction at all; depending upon the level of assistance the government determines that the defendant has provided.

The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion.  In particular, the defendant agrees not to try to file a motion to withdraw his guilty pleas based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following sentencing, the government may move for a further reduction of his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

**B.     Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.     ELEMENTS OF THE OFFENSES

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty, Conspiracy to Commit Interstate Transportation of Stolen Property in violation of 18 U.S.C. § 371:

1.  There was an agreement between two or more persons to commit Interstate Transportation of Stolen Property;

2.  Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3.  One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty, 18 U.S.C. § 1956(h), Money Laundering Conspiracy:

1.  There was an agreement to commit money laundering;

2.  Defendant knew the objective of the agreement; and

3.  Defendant joined the agreement with the intent to further its unlawful purpose.

The elements the government must prove for a violation of 18 U.S.C. § 1956(a)(1)(A)(i), Promotional Money Laundering, are:

1.  Defendant conducted a financial transaction involving property that represented the proceeds of Interstate Transportation of Stolen Property;

2.  Defendant knew that the property represented the proceeds of some form of unlawful activity; and

3. Defendant acted with the intent to promote the carrying on of Interstate Transportation of Stolen Property.

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty, 18 U.S.C. § 2314, Interstate Transportation of Stolen Property:

1. Defendant transported stolen property between one state and another;

2. At the time the property crossed the state border, defendant knew it was stolen;

3. Defendant intended to deprive the owner of the ownership of the property temporarily or permanently; and

4. The stolen property had a value of $5,000 or more.

The defendant fully understands the nature and elements of the crimes to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.    **MAXIMUM SENTENCE**

### A.    **Maximum Penalty.**

The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate, is five years of incarceration, a fine of $250,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1956(h) – Conspiracy to Commit Promotional Money Laundering, is 20 years of incarceration, a fine of $500,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

The maximum sentence that the Court can impose for each violation of 18 U.S.C. § 2314 – Interstate Transport of Stolen Property, is 10 years of incarceration, a fine of $250,000 or twice the gross gain or loss, a three-year period of supervised release and a special assessment of $100.

Accordingly, the maximum period of incarceration that the Court can impose for all Counts defendant is pleading guilty to is 65 years imprisonment.

### B.    **Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the

defendant to serve up to three additional years imprisonment.

## VI.      SENTENCING DETERMINATION

### A.    Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B.    Stipulated Guideline Calculation.

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

| | | |
|---|---|---|
| 1. | Base Offense Level (2S1.1(a)(2)): | 8 |
| 2. | Loss Amount over $118 million (2B1.1(b)(1)(M)): | +24 |
| 3. | Conviction under 18 U.S.C. § 1956 (2S1.1(b)(2)(A)): | +2 |
| 4. | Aggravating Role, organizer and leader (3B1.1(a)): | +4 |
| 5. | Acceptance of Responsibility: See paragraph III.A.2 above | - 3 |
| 6. | Total Offense Level: | 35 |

7.     Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be I.

8.     Sentencing Range: 168-210 months (The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.)

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"),

or cross-references, except that the government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1) or post-plea obstruction of justice (§3C1.1).

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a).

## VII.     WAIVERS

### A.     Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.     Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence.  The defendant agrees as part of his pleas, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which he is pleading guilty.  The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his pleas, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.D herein.

**C.    Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

**D.    Waiver of Venue**

The defendant agrees to waive any and all objections to the venue of the Eastern District of California in connection with this plea agreement.  Additionally, the defendant agrees to waive any and all objections to the venue or jurisdiction of the Eastern District of California in connection with his sentencing and judgment in the Northern District of California case.

**E.    Impact of Plea on Defendant's Immigration Status.**

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including offenses to which the defendant is pleading guilty.  The defendant and his counsel have discussed the fact that the charges to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 U.S.C. § 1101(a)(43).  Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the

1 | consequence is his automatic removal from the United States.

## VIII.    ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.    APPROVALS AND SIGNATURES

### A.    Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated:  1/15/2026

DANIEL OLMOS
Attorney for Defendant

### B.    Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: _____

NAVIN KHANNA
Defendant

1  consequence is his automatic removal from the United States.

2  ## VIII.    ENTIRE PLEA AGREEMENT

3  Other than this plea agreement, no agreement, understanding, promise, or condition between the

4  government and the defendant exists, nor will such agreement, understanding, promise, or condition

5  exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

6  counsel for the United States.

7  ## IX.    APPROVALS AND SIGNATURES

8  ### A.    Defense Counsel.

9  I have read this plea agreement and have discussed it fully with my client. The plea agreement

10  accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to

11  plead guilty as set forth in this plea agreement.

12  Dated: _____

13  _____
   DANIEL OLMOS
   Attorney for Defendant

14

15

16  ### B.    Defendant:

17  I have read this plea agreement and carefully reviewed every part of it with my attorney. I

18  understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully

19  understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

20  case. No other promises or inducements have been made to me, other than those contained in this plea

21  agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement.

22  Finally, I am satisfied with the representation of my attorney in this case.

23  Dated: 1/15/2026

   _Navin /Clame_
   NAVIN KHANNA
   Defendant

24

25

26

27

28

PLEA AGREEMENT                                    19

1    **C.    Attorneys for United States:**

2        I accept and agree to this plea agreement on behalf of the government.

3    Dated: _____1/26/2026_____        ERIC GRANT
                                        United States Attorney
4                                       Eastern District of California

5

6                                       _____
                                        VERONICA M.A. ALEGRÍA
7                                       Assistant United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

Factual Basis for Pleas

From at least October 2019 through March 2024, NAVIN KHANNA aka Lovin Khanna ("N. KHANNA"), TINU KHANNA aka Gagan Khanna ("T. KHANNA"), DANIEL DOLAN ("DOLAN"), CHI MO aka David Mo ("MO"), Wright Louis Mosley ("Mosley"), Ishu Lakra ("Lakra"), NIRMAL KHANNA, aka Vinnie Khanna ("V. KHANNA"), MICHAEL KHANNA ("M. KHANNA"), and ANITA KHANNA ("A. KHANNA") conspired, confederated, and agreed with each other to purchase and transport stolen catalytic converters from the Eastern District of California and other states to the state of New Jersey.

From at least October 2019 through about October 2022, within N. KHANNA, T. KHANNA, Tou Vang and Andrew Vang conspired, confederated, and agreed with each other to conduct financial transactions knowing that the property involved in the financial transactions represented the proceeds from stolen catalytic converters that had been transported from the Eastern District of California to New Jersey to promote the further purchasing and transporting of stolen catalytic converters across state lines.

Thieves steal catalytic converters from vehicles for the precious metals they contain, which may be more valuable per ounce than gold. Catalytic converter theft has become popular across the nation because of their value, relative ease to steal, and their lack of identifying markings.

DG Auto Parts LLC aka DG Auto Wreckers aka Blacey's Auto ("DG AUTO") was a criminal enterprise that received large shipments of stolen catalytic converters from its affiliates and franchisees across the nation. DG AUTO used its specialized equipment to "de-can" the catalytic converters it received and then sold the resulting powdered precious metals to a metal refinery.

N. KHANNA, T. KHANNA, and M. KHANNA are brothers; their father is V. KHANNA and their mother is A. KHANNA. All five – N. KHANNA, T. KHANNA, V. KHANNA, M. KHANNA and A. KHANNA – operated DG AUTO and opened and controlled bank accounts on behalf of DG AUTO. N. KHANNA was the majority owner, CEO, and leader of DG AUTO. T. KHANNA handled various business operations, including DG AUTO's banking operations and the payments to DG AUTO's clients. DOLAN, MO, Mosley, and Lakra worked in DG AUTO warehouses, where they would receive shipments, meet with customers, and sort and grade stolen catalytic converters prior to their purchase by DG AUTO. DG AUTO used its DG AUTO Pricing Application, advertisements and communications on Facebook, and other means to encourage its clients to procure high-value stolen catalytic converters, such as Toyota Prius catalytic converters.

N. KHANNA and DG AUTO worked with intermediate buyers of stolen catalytic converters. These intermediate buyers included:

- Capital Cores Corp., located in New York and operated by Adam Sharkey;
- Curtis Cores, LLC, located in Oklahoma and operated by Tyler Curtis;
- M&M Core Buying, located in Leila Lake, Texas and operated by Martynas Macerauskas;
- Green County Auto Core, located in Kansas, Oklahoma;
- Kottens Cores and Catalytic Converters, located in St. Paul, Minnesota; and
- Vang Auto, located in the Sacramento, California area and operated by Tou Sue Vang ("T. Vang"), Andrew Vang ("A. Vang"), and Monica Moua.

T. Vang and A. Vang opened and controlled bank accounts in the name of Vang Auto and shipped stolen catalytic converters across state lines to N. KHANNA and DG AUTO in New Jersey. N. KHANNA and T. Vang coordinated the shipments and payments via Facebook communications. Some of these shipments were over 1,000 pounds and contained a single type of high-value catalytic converter, such as the Toyota Prius. In particular:

1. On September 3, 2020, T. Vang shipped approximately 300 stolen Toyota Prius catalytic converters from California to New Jersey via a private commercial shipping company and sold them to N. KHANNA and DG AUTO in return for $400,000 that was wired from the DG AUTO account to the Vang Auto account.

2. April 13, 2021, T. Vang shipped two boxes of stolen catalytic converters with a combined weight of 4,370 pounds from California to N. KHANNA and DG AUTO in New Jersey for a total payment of $975,500.

3. On January 24, 2022, T. Vang shipped two boxes of stolen catalytic converters (one of over 500 Toyota Prius catalytic converters) with a combined weight of 2,776 pounds from Vang Auto in California to N. KHANNA and DG AUTO in New Jersey in return for $405,035. DOLAN graded the shipment of stolen catalytic converters and sent the tally sheet to T. Vang.

4. On February 8, 2022, T. Vang shipped three boxes of stolen catalytic converters labeled "Auto Parts Not Restricted" and weighing 4,417 pounds from California to N. KHANNA and DG AUTO in New Jersey in return for a total payment of $270,335.

N. KHANNA, T. KHANNA, DOLAN, MO, Mosley, and Lakra also conspired, confederated, and agreed with each other to purchase purportedly stolen catalytic converters transported from California to New Jersey from a person they did not know was actually a Confidential Informant. These included the following transactions:

1. On April 7, 2022, DOLAN, Lakra, and N. KHANNA purchased approximately 53 purportedly stolen catalytic converters for $22,412 from the Confidential Informant. Based on the converters' parts numbers, DOLAN stated to the Confidential Informant, "You got these out of Cali." Lakra gave the Confidential Informant a check issued by a DG AUTO bank account.

2. On April 20, 2022, DOLAN, Lakra, and T. KHANNA purchased approximately 146 purportedly stolen catalytic converters for $73,158 from the Confidential Informant. DOLAN and Lakra graded the catalytic converters for pricing purposes. DOLAN saw what he thought was blood on one of the catalytic converters and said, "They cut themselves taking the cat." T. KHANNA sent a wire payment to the Confidential Informant from a DG AUTO bank account.

3. On June 2, 2022, T. KHANNA, Lakra, DOLAN, and MO purchased approximately 283 purportedly stolen catalytic converters for $70,569 from the Confidential Informant. Lakra, DOLAN, and MO sorted and graded the catalytic converters for pricing. T. KHANNA paid for the catalytic converters via a wire transfer from a DG AUTO bank account.

4. On June 23, 2022, N. KHANNA and T. KHANNA purchased approximately 198 various purportedly stolen catalytic converters and 100 purportedly stolen brand new Toyota Prius catalytic converters for $166,670 from the Confidential Informant. Prior to the purchase, the Confidential Informant told N. KHANNA and T. KHANNA that the Prius converters had been stolen by a "Cousin" who worked at a California Toyota warehouse. Upon viewing the brand new Prius converters at the DG AUTO warehouse, Lakra asked, "Where do you get all of these?" Another DG AUTO employee replied, "Don't ask, don't tell policy." N. KHANNA and T. KHANNA agreed to pay the Confidential Informant an additional 8% over the normal value. Then T. KHANNA instructed Lakra to get the new Prius converters out of DG AUTO as quickly as possible. T. KHANNA paid the Confidential Informant via a wire transfer from a DG AUTO bank account.

5. On July 19, 2022, T. KHANNA, Lakra, MO, and DOLAN purchased approximately 262 purportedly stolen catalytic converters for $99,390 from the Confidential Informant. Lakra, MO, and DOLAN unloaded, inspected, and priced the catalytic converters. T. KHANNA paid for the converters via a wire transfer from a DG AUTO bank account.

6. On September 1, 2022, N. KHANNA and T. KHANNA purchased approximately 402 purportedly stolen brand new Toyota Prius catalytic converter "bricks" – the internal core of a catalytic converter containing the precious metals – and 98 purportedly stolen other catalytic converters for $259,200 from the Confidential Informant. T. KHANNA and N. KHANNA had previously negotiated the purchase of the bricks from the Confidential Informant, who told them the Cousin stole the bricks from the California Toyota warehouse. N. KHANNA agreed to pay 10% above the DG AUTO Pricing Application listed price for the stolen Toyota Prius bricks. N. KHANNA told the Confidential Informant that having the Toyota Prius bricks at the DG AUTO facility was worse than having GD3 EA6s.[1] Then, N. KHANNA and the Confidential Informant delivered the bricks directly to a metal refinery. At T. KHANNA's instruction, Lakra paid the Confidential Informant $50,000 in currency. T. KHANNA wired the remainder of the price to the Confidential Informant from a DG AUTO bank account.

N. KHANNA, and T. KHANA, using DG AUTO bank accounts they controlled, have wired over $118 million in return for stolen catalytic converters shipped from other states to the state of New Jersey. These include the following:

- Over 54 million dollars to Capital Cores;
- Over 16 million dollars to Curtis Cores;
- Over 6 million dollars to M&M Core Buying;
- Over 2 million dollars to Green Country Auto Core;
- Over 2 million dollars to Kotten Cores and Catalytic Converters; and
- Over 38 million dollars to Vang Auto.

T. Vang, A. Vang, and others used the funds they received from N. KHANNA and T. KHANNA and withdrew cash from their bank accounts to purchase more stolen catalytic converters, thereby promoting the carrying on of the unlawful activity. N. KHANNA and T. KHANNA knew that the funds were being used to purchase more stolen catalytic converters.

N. KHANNA and T. KHANNA were arrested in this case in November 2022, and were eventually detained in California pending their trial, whereupon V. KHANNA, A. KHANNA, and M. KHANNA assumed leadership roles in DG AUTO. V. KHANNA managed the purchasing of scrap and stolen catalytic converters out of a DG AUTO facility. A. KHANNA worked at the front desk and handled the finances, payables, and receivables for stolen catalytic converters. M. KHANNA worked the salvage yard as a yard manager.

From at least June 2023, through at least March 2024, V. KHANNA, A. KHANNA, and M. KHANNA continued DG AUTO's business of purchasing stolen catalytic converters from other states and transporting them to New Jersey, including by using a person they did not know was actually another Confidential Informant. V. KHANNA and M. KHANNA instructed the Confidential Informant to purchase a trailer using money they provided and equip it with a shears and equipment to de-can stolen catalytic converters. The trailer was disguised to look like a construction trailer. V. KHANNA, M. KHANNA, and A. KHANNA directed the Confidential Informant to purchase stolen catalytic converters off-site from DG AUTO's property and out of state, de-can them using the trailer's equipment, and then conceal the resulting precious metal powder in concrete bags to further avoid law enforcement discovery of the stolen catalytic converters. Then V. KHANNA, M. KHANNA, and A. KHANNA instructed the Confidential Informant to transport the stolen powder to a metal refinery. The

//

---

[1] GD3 EA6 is the parts code for a catalytic converter from a Toyota Prius from years 2004-2009. These are among the most valuable catalytic converters because of their higher concentration of precious metals. The vanity license plate from one of N. KHANNA's McLaren vehicles is "GD3-EA6."

1  metal refinery paid Ricky VEGA for the stolen catalytic converter powder, who in turn issued checks to
   DG AUTO that the Confidential Informant delivered from VEGA to A. KHANNA.

2

3  I have reviewed the "Factual Basis" information above with my attorney, and agree that it is accurate.

4

5  Dated:  1/15/2026                          Navin Khanna
                                              NAVIN KHANNA, Defendant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                    A-4